IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

TIWIAN LAQUINN SKIEF,                  §
TDCJ No. 1769917,                      §
                                       §
            Petitioner,                §
                                       §
V.                                     §          No. 3:18-cv-226-M-BN
                                       §
DIRECTOR, TDCJ-CID,                    §
                                       §
            Respondent.                §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Petitioner Tiwian Laquinn Skief, a Texas prisoner, "was convicted of murder and sentenced to fifty years in prison." *Skief v. State*, No. 05-12-00223-CR, 2013 WL 2244336, at *1 (Tex. App. – Dallas May 21, 2013, pet. ref'd), *aff'g State v. Skief*, No F10-35936-L (Crim. Dist. Ct. No. 5, Dallas Cnty., Tex. Feb. 10, 2012). After his criminal judgment was affirmed on direct appeal, the Texas Court of Criminal Appeals ("CCA") refused Skieff's petition for discretionary review, *see Skief v. State*, PD-0655-15 (Tex. Crim. App. Nov. 4, 2015), and the United States Supreme Court denied his petition for a writ of certiorari, *see Skief v. Texas*, 137 S. Ct. 62 (2016).

The CCA also denied Skieff's state habeas application without written order on the trial court's findings without a hearing. *See Ex parte Skief*, WR-82,496-02 (Tex. Crim. App. Dec. 20, 2017).

He then filed a *pro se* 28 U.S.C. § 2254 habeas petition [Dkt. Nos. 3 & 5] on January 20, 2018, the date on which he certifies that he placed the petition in the

prison mailing system,[1] *see* Dkt. No. 3 at 11. Skieff raises for federal habeas review two claims that he raised on direct appeal (that the trial court erred by overruling an objection to the jury charge and by violating his confrontation rights) and ineffective assistance of counsel ("IAC") claims that Skief raised in the state habeas petition.

His case has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from Chief Judge Barbara M. G. Lynn. The State responded to the Skief's habeas application. *See* Dkt. No. 13. And Skief filed a reply brief. *See* Dkt. No. 14.

The undersigned now enters these findings of fact, conclusions of law, and recommendation that the Court should deny federal habeas relief.

## Legal Standards

"Federal habeas features an intricate procedural blend of statutory and caselaw authority." *Adekeye v. Davis*, 938 F.3d 678, 682 (5th Cir. 2019). In the district court, this process begins – and often ends – with the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), under which "state prisoners face strict procedural requirements and a high standard of review." *Adekeye*, 938 F.3d at 682 (citation omitted).

Under AEDPA, where a state court has already rejected a claim on the merits,

---

[1] *See* RULE 3(d), RULES GOVERNING SECTION 2254 CASES IN THE UNITED STATES DISTRICT COURTS ("A paper filed by an inmate confined in an institution is timely if deposited in the institution's internal mailing system on or before the last day for filing."); *Uranga v. Davis*, 893 F.3d 282, 286 (5th Cir. 2018) ("We reaffirm that the operative date of the prison mailbox rule remains the date the pleading is delivered to prison authorities.").

a federal court may grant habeas relief on that claim only if the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Adekeye*, 938 F.3d at 682 ("Once state remedies are exhausted, AEDPA limits federal relief to cases where the state court's decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' or was 'based on an unreasonable determination of the facts in light of the evidence presented.'" (citation omitted)); *see also Allen v. Vannoy*, 659 F. App'x 792, 798-99 (5th Cir. 2016) (per curiam) (describing Section 2244(d) as "impos[ing] two significant restrictions on federal review of a habeas claim ... 'adjudicated on the merits in state court proceedings'").

A state court adjudication on direct appeal is due the same deference under Section 2254(d) as an adjudication in a state post-conviction proceeding. *See, e.g.*, *Dowthitt v. Johnson*, 230 F.3d 733, 756-57 (5th Cir. 2000) (a finding made by the CCA on direct appeal was an "issue ... adjudicated on the merits in state proceedings," to be "examine[d] ... with the deference demanded by AEDPA" under "28 U.S.C. § 2254(d)").

And "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was

unreasonable – a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *see also Sanchez v. Davis*, 936 F.3d 300, 305 (5th Cir. 2019) ("[T]his is habeas, not a direct appeal, so our focus is narrowed. We ask not whether the state court denial of relief was incorrect, but whether it was unreasonable – whether its decision was 'so lacking in justification' as to remove 'any possibility for fairminded disagreement.'" (citation omitted)).

A state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004); *see also Lopez v. Smith*, 574 U.S. 1, 2 (2014) (per curiam) ("We have emphasized, time and time again, that the [AEDPA] prohibits the federal courts of appeals from relying on their own precedent to conclude that a particular constitutional principle is 'clearly established.'" (citation omitted)).

"A state court unreasonably applies clearly established Supreme Court precedent when it improperly identifies the governing legal principle, unreasonably extends (or refuses to extend) a legal principle to a new context, or when it gets the principle right but 'applies it unreasonably to the facts of a particular prisoner's case.'" *Will v. Lumpkin*, 970 F.3d 566, 573 (5th Cir. 2020) (quoting *Williams v. Taylor*, 529 U.S. 362, 407-08 (2000); citation omitted). "But the Supreme Court has only clearly established precedent if it has 'broken sufficient legal ground to establish an asked-for constitutional principle.'" *Id.* at 573-74 (quoting *Taylor*, 569 U.S. at 380-82;

citations omitted).

"For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.... A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citations and internal quotation marks omitted). "Under § 2254(d), a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102 (internal quotation marks omitted); *see also Evans v. Davis*, 875 F.3d 210, 216 (5th Cir. 2017) (recognizing that Section 2254(d) tasks courts "with considering not only the arguments and theories the state habeas court actually relied upon to reach its ultimate decision but also all the arguments and theories it could have relied upon" (citation omitted)).

The Supreme Court has further explained that "[e]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Richter*, 562 U.S. at 101 (internal quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. The Supreme Court has explained that, "[i]f this standard is difficult to meet, that is because it was meant to be," where, "[a]s amended by

AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," but "[i]t preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents," and "[i]t goes no further." *Id.* Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *accord Burt v. Titlow*, 571 U.S. 12, 20 (2013) ("If this standard is difficult to meet – and it is – that is because it was meant to be. We will not lightly conclude that a State's criminal justice system has experienced the extreme malfunction for which federal habeas relief is the remedy." (internal quotation marks, brackets, and citations omitted)).

As to Section 2254(d)(2)'s requirement that a petitioner show that the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the Supreme Court has explained that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance" and that federal habeas relief is precluded even where the state court's factual determination is debatable. *Wood v. Allen*, 558 U.S. 290, 301, 303 (2010). Under this standard, "it is not enough to show that a state court's decision was incorrect or erroneous. Rather, a petitioner

must show that the decision was objectively unreasonable, a substantially higher threshold requiring the petitioner to show that a reasonable factfinder must conclude that the state court's determination of the facts was unreasonable." *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) (brackets and internal quotation marks omitted).

The Court must presume that a state court's factual determinations are correct and can find those factual findings unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001).

This presumption applies not only to explicit findings of fact but also "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Ford v. Davis*, 910 F.3d 232, 235 (5th Cir. 2018) (Section 2254(e)(1) "'deference extends not only to express findings of fact, but to the implicit findings of the state court.' As long as there is 'some indication of the legal basis for the state court's denial of relief,' the district court may infer the state court's factual findings even if they were not expressly made." (footnotes omitted)).

And, even if the state court errs in its factual findings, mere error is not enough – the state court's decision must be "*based* on an unreasonable factual determination. … In other words, even if the [state court] had gotten [the disputed] factual determination right, its conclusion wouldn't have changed." *Will*, 970 F.3d at 575.

Further, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion

from the state court explaining the state court's reasoning." *Richter*, 562 U.S. at 98; *see also Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003) ("a federal habeas court is authorized by Section 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that decision" (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) (per curiam))); *Evans*, 875 F.3d at 216 n.4 (even where "[t]he state habeas court's analysis [is] far from thorough," a federal court "may not review [that] decision de novo simply because [it finds the state court's] written opinion 'unsatisfactory'" (quoting *Neal*, 286 F.3d at 246)).

Section 2254 thus creates a "highly deferential standard for evaluating state court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). To overcome this standard, a petitioner must show that "there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. That is, a petitioner must, in sum, "show, based on the state-court record alone, that any argument or theory the state habeas court could have relied on to deny [him] relief would have either been contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court." *Evans*, 875 F.3d at 217.

## Analysis

I.    Skief has not shown that he is entitled to federal habeas relief on the jury <u>charge argument rejected on direct appeal.</u>

Skief initially raised his first federal habeas claim on direct appeal, so the Court should "look through" to the Dallas Court of Appeals's substantive denial of the

claim, a claim that the CCA refused to review.[2]

In his first issue, appellant argues the trial court erred by refusing to remove portions of the jury charge that were, according to appellant, not supported by the evidence. He contends the trial court erred by overruling his objection to the portion of the jury charge that restricted appellant's self-defense claim if appellant sought an explanation from the complainant, Tyvanti Johnson, while unlawfully carrying a handgun. As objected to by appellant, the relevant portion of the court's charge reads as follows:

> Our law further provides that it is unlawful for a person to intentionally or knowingly or recklessly carry a handgun on or about his person, unless he is traveling.
>
> A person acts "recklessly" or is "reckless" with respect to the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances, as viewed from the standpoint of the person charged.
>
> For a person to be deemed "reckless" there must actually be both a substantial and unjustifiable risk that the result complained of will occur, and that the person acting was actually aware of such risk and consciously disregarded it.
>
> While a defendant has a right to seek an explanation from or discussion with another concerning a difference with the other person, the use of force against another is not justified if the defendant sought an explanation from or discussion with another concerning a difference with the other person while the defendant was unlawfully carrying a handgun.

---

[2] *Cf. Caldwell v. Davis*, 757 F. App'x 336, 340 (5th Cir. 2018) (per curiam) ("[B]ecause the order on collateral review did not consider the merits of Caldwell's claims, we "look through" to the last state court decision to do so: the state intermediate appellate court's decision on direct review." (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 804-06 (1991))); *Leachman v. Stephens*, 581 F. App'x 390, 395 (5th Cir. 2014) ("a state habeas decision [ ] found that the petitioner's argument[ ] has been 'previously considered and rejected' on direct appeal[, and] ... 'in light of that determination' [this Court should] 'examine the last clear state court decision of any substance'" (quoting *Divers v. Cain*, 698 F.3d 211, 216 (5th Cir. 2012)))).

Now, therefore, if you find and believe from the evidence beyond a reasonable doubt that the force used by the defendant against TYVANTI JOHNSON was at a time when the defendant was seeking an explanation from TYVANTI JOHNSON, but at that time the defendant was unlawfully carrying a weapon, to-wit: a handgun, you will find against the defendant's claim of self-defense.

Defense counsel objected to the portions of the above-quoted charge pertaining to unlawful carrying of a weapon and the exception to self-defense. He argued the circumstances required for the exception to apply were not raised by the evidence:

I would submit to the Court that that circumstance has not been raised by the evidence. I would submit that the evidence that's before the jury is, both from the testimony of the Defendant and of Eric Alexander, that Tyvanti Johnson, the victim in this case, was the one who first hopped out of his car in the middle of Compton Street and was attempting to flag down or approach [appellant]; that he was the one who initiated the confrontation that resulted in Tyvanti Johnson's death.

In this circumstance, I do not believe that the evidence could be interpreted by the jury to the contrary, including phone records and everything else that's been introduced by the State and by the Defense, testimony as well. A reasonable jury could never conclude that it was [appellant] who initiated this discussion in any way, shape or form. And I would submit that's improper in charging the jury with that language.

The State responded that there was evidence supporting the submission of the charge:

So it's the State's contention that there is evidence in front of this jury that [appellant] had differences with the victim and, on that day, by pulling that car over, by getting out and going toward or making himself in a position to seek out a discussion about those differences, getting out of that car, as he sees where the victim was, that that has been raised and the jury can absolutely interpret this in a reasonable manner, to suggest that he armed himself and went and had himself a confrontation with the victim in this case.

The trial court overruled the objection and presented the charge to the jury.

Jury charge error is reviewed under the standard set out in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on

- 10 -

reh'g). Under that standard, we first determine whether there was error in the charge. *Id.* at 174. If error occurred and appellant objected at trial, the reviewing court determines whether the error was "calculated to injure" the appellant's rights, which means there must be "some harm" to the accused resulting from the error. *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009) (citing *Almanza*, 686 S.W.2d at 171). If, however, the appellant did not object, the reviewing court will reverse only if the error resulted in "egregious harm." *Id.* (quoting *Almanza*, 686 S.W.2d at 171).

The penal code provides that a person is justified in using deadly force when and to the degree the person reasonably believes it is immediately necessary to protect himself from another's use or attempted use of unlawful deadly force. TEX. PENAL CODE ANN. §§ 9.31(a), 9.32(a). An exception to self-defense applies when the actor "sought an explanation from or discussion with the other person concerning the actor's differences with the other person while the actor was: (A) carrying a weapon in violation of section 46.02." *Id.* § 9.31(b)(5)(A).

"A person commits an offense if the person intentionally, knowingly, or recklessly carries on or about his or her person a handgun ... if the person is not: (1) on the person's own premises or premises under the person's control." *Id.* § 46.02(a). A person also commits an offense if he intentionally, knowingly, or recklessly carries on or about his or her person a handgun in a motor vehicle that is owned by the person or under the person's control at any time in which: ... (2) the person is: (A) engaged in a criminal activity, other than a Class C misdemeanor that is a violation of a law or ordinance regulating traffic," or is "prohibited by law from possessing a firearm." *Id.* § 46.02(a–1)(2).

A defendant is entitled to an instruction on every defensive issue raised by the evidence. *Elmore v. State*, 257 S.W.3d 257, 259 (Tex. App. – Houston [1st Dist.] 2008, no pet.). A defensive issue may be raised solely by the defendant's testimony. *Id.* In determining whether the defendant's testimony raises the issue of self-defense, the truth of the defendant's testimony is not at issue. *Id.* Generally, issues like provocation or whether the defendant carried a gun to a discussion are fact issues that are included in the charge as limitations to self-defense. *See id.* A charge under section 9.31(b)(5)(A) limiting the right of self-defense is properly given when (1) self-defense is an issue; (2) there are facts in evidence that show the defendant sought an explanation from or discussion with the victim concerning their differences; and (3) the defendant was unlawfully carrying a weapon. *Lee v. State*, 259 S.W.3d 785, 789 (Tex. App. – Houston [1st Dist.] 2007, pet. ref'd); *Fink v. State*, 97 S.W.3d 739, 743 (Tex. App. – Austin 2003, pet. ref'd).

The factors noted in *Lee* and other decisions are present in this

case. First, appellant testified he shot Tyvanti in self-defense; the charge instructed the jury on the law of self-defense. Furthermore, appellant did not dispute he was unlawfully carrying a weapon. He admitted at trial that he was carrying a handgun in violation of his parole and that he was selling drugs. As for the second factor, whether there were facts in evidence showing the defendant sought an explanation or discussion with the victim concerning their differences, appellant argues there was no evidence he ever approached Tyvanti. Appellant contends his testimony and the testimony of Eric Alexander, an eyewitness, show that the complainant approached appellant, and that nothing in their testimony supports the inference that appellant sought out or instigated the conversation with Tyvanti.

Appellant, known as "Hitman," and Tyvanti, known as "Eastwood" or "626," grew up together in Irving and were friends into their adult years. Although not related, they had close ties through their families and "were basically like cousins." By December of 2010, however, their friendship had deteriorated. Several weeks before the shooting, they had a confrontation at an Irving, Texas apartment complex. Tyvanti arrived at the apartments with his girlfriend, Tanesha Jones, in a Mazda 626. Appellant and his cousin, Rashad Townsend, arrived shortly afterwards in a gold Jeep. Appellant approached Tyvant's car, pounded on the passenger's side door, and yelled that Tyvanti owed him money. Tanesha could not hear the entire argument between Tyvanti and appellant because she stayed in the car, but she heard appellant say, "On blood, you're not going to be driving this car no more." Tyvanti then took off his shirt and said, "Let's fight." At that point, appellant got back into the gold Jeep and drove away, almost hitting Tyvanti.

Alexander testified that he was driving north on Compton street in Irving at approximately 1:20 p.m. on December 28, 2010, when he saw a Mazda 626 stop in the road. The driver of the Mazda "jumped" out of the car and walked toward the back of the car. Suddenly, a white Chrysler 300 pulled onto the street, "whipped" toward the man that was walking toward the rear of the Mazda, and "clipped" him. To Alexander, it looked as though the driver of the Chrysler deliberately tried to hit the man and that "he was trying to harm the guy." After "clipping" the man, the driver of the Chrysler drove to the next intersection, Compton and Carver streets, immediately turned onto Carver, and parked his car. As Alexander drove by, he could see the man in the Mazda walking towards "the car that clipped him." Alexander "couldn't see or hear what he was saying, but he was upset." He did not appear to be carrying any type of weapon. As for the driver of the Chrysler, Alexander added: "I saw a guy standing outside his car, in between the door and his car. He was standing, watching the guy walking toward him. Whatever he was

saying." After driving through the intersection, Alexander continued watching the two men in his rearview mirror. He did not hear a gunshot but saw the man who had exited the Mazda "jump" or "flinch," then turn around. At that point, Alexander knew "something bad" had happened, and he pulled over and called 911. On cross-examination, he testified that he did not see a weapon in either driver's hand and that he could not identify appellant in a six-photo lineup as one of the individuals he saw.

The suspect vehicle, a white Chrysler 300, belonged to Mark Sample, who was arrested based on outstanding warrants and interviewed by the Irving police. During his first interview, which occurred on the day of the offense, Sample admitted owning the car and told the police he had been in possession of it the entire day of the offense. He denied any knowledge of the shooting. In a second interview with the police the following day, Sample told the Irving police detective, Joe Hennig, that appellant was driving the Chrysler at the time of the offense and that they traded cars at the Lipstick Gentlemen's Club, where appellant's girlfriend, Riketta Johnson, worked as a dancer. When he testified in his defense, appellant told the jury he traded cars with Sample on December 28, 2010 because he "wanted to kind of show off a little bit" for an ex-girlfriend he planned to meet.

We conclude the trial court properly instructed the jury. There is sufficient evidence from which a rational trier of fact could find appellant sought an explanation from or discussion with the complainant after appellant's car suddenly swerved and struck or nearly struck the complainant. Because there is evidence raising the issue, we therefore conclude the trial court did not err by instructing the jury under section 9.31(b)(5)(A), and that the jury charge does not contain error. *See Lee*, 259 S.W.3d at 790-91. We overrule appellant's first issue.

*Skief*, 2013 WL 2244336, at *1-*4 (footnote omitted).

"A state prisoner is entitled to relief under 28 U.S.C. § 2254 only if he is held 'in custody in violation of the Constitution or laws or treaties of the United States.' Insofar as [Skief] simply challenge[s] the correctness of the self-defense instructions under [Texas] law, [he] allege[s] no deprivation of federal rights and may not obtain habeas relief." *Engle v. Isaac*, 456 U.S. 107, 119 (1982); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

- 13 -

Rather, to obtain relief under Section 2254, Skief must show that "the allegedly ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Broadnax v. Davis*, No. 3:15-cv-1758-N, 2019 WL 3302840, at *13 (N.D. Tex. July 23, 2019) (citing *Estelle*, 502 U.S. at 72; *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973); *Johnson v. Puckett*, 176 F.3d 809, 824 (5th Cir. 1999) ("'As a federal habeas court, our question is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even universally condemned.'" (quoting *Kinnamon v. Scott*, 33 F.3d 462 (5th Cir. 1994)))).

Skief fails to show that the trial court's ruling was error, much less a constitutional violation that deprived him of a fair proceeding. The Court should therefore deny this claim.

II.    **Skieff has not shown that the Dallas Court of Appeals's denial of the Confrontation Clause Claim was unreasonable.**

Skieff next raises for federal habeas review the Dallas Court of Appeals's holding that the trial court did nor err in overruling his objection that testimony about a statement made by his girlfriend, Riketta Johnson, to Barbara Castro that Skieff had "shot somebody" violated the Sixth Amendment's Confrontation Clause. In sum, the Dallas Court of Appeals held,

> [i]n this case, we cannot conclude the complained-of statement was "testimonial" under *Crawford[ v. Washington*, 541 U.S. 36 (2004)]. Nothing in the statement or in the circumstances under which it was made would lead an objective witness reasonably to believe the statement would be available for use at a later trial. The statement was not made in any kind of formal setting or structured environment, nor

was it a response to a police interrogation, inquiry, or investigation. On the contrary, when viewed objectively, the statement appears to have been an excited utterance made to a co-worker. The statement, taken in context, explained why Riketta seemed startled by whatever she had heard on the phone and why she appeared nervous, agitated, upset, and paced the room. Under these circumstances, we cannot conclude the trial court erred by admitting the statement as an excited utterance. We overrule appellant's third issue.

*Skief*, 2013 WL 2244336, at *10.

The Dallas Court of Appeals "specifically found that [Johnson's statement to Castro was] non-testimonial, and so in order to prevail, [Skief] must show that this finding represents an unreasonable application of clearly established federal law, as determined by the Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *Johnson v. Directors, TDCJ-CID*, No. 9:11cv124, 2012 WL 2277844, at *10 (E.D. Tex. May 10, 2012) (citation omitted), *rec. adopted*, 2012 WL 2277839 (E.D. Tex. June 15, 2012).

This heightened unreasonableness standard of review does not afford relief even if Court disagrees with the state court's conclusion that the statement was non-testimonial. Instead, to warrant relief, the state court's conclusion must be "'so lacking in justification' as to remove 'any possibility for fairminded disagreement.'" *Sanchez*, 936 F.3d at 305 ("[T]his is habeas, not a direct appeal, so our focus is narrowed."); *see also Johnson*, 2012 WL 2277844, at *11 ("The federal court cannot reverse a state court decision merely because the federal court would reach a different outcome; rather, the federal court must conclude that the state court applied a correct legal rule to a given set of facts in a manner which was so patently incorrect as to be unreasonable." (citing *Gardner*, 247 F.3d at 560)).

- 15 -

Skief has not shown that the state court's reasoned application of *Crawford* to the set of facts before it – and its conclusion that the statement was non-testimonial, particularly given in the setting in which it was uttered – "was so patently incorrect as to be unreasonable, nor has [Skief] offered clear and convincing evidence to overcome the presumption that the factual determinations made by the state court in this regard were correct." *Johnson*, 2012 WL 2277844, at *11; *see also* 28 U.S.C. § 2254(e)(1); *Gardner*, 247 F.3d at 560; *Valdez*, 274 F.3d at 948 n.11; *Ford*, 910 F.3d at 235.

The Court should therefore deny this ground for habeas relief.

III. **Skief has not shown that the CCA's adjudication of the IAC claims is <u>unreasonable</u>.**

Skief asserts that his trial counsel violated his Sixth Amendment right to effective counsel (1) by failing to adequately investigate and produce certain phone records; (2) by failing to object when the prosecution referred to him by his street name – "Hitman" – and thus also preserve this asserted error for appeal; (3) by agreeing to allow the trial court to address the jury after two jury members spoke with Skief's stepsister during a break.

The Court reviews IAC claims, whether directed at trial or appellate counsel, under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984), under which a petitioner "'must show that counsel's performance'" – "'strongly presume[d to be] good enough'" – "'was [1] objectively unreasonable and [2] prejudiced him.'" *Coleman v. Vannoy*, 963 F.3d 429, 432 (5th Cir. 2020) (quoting *Howard v. Davis*, 959 F.3d 168, 171 (5th Cir. 2020)).

To count as objectively unreasonable, counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687; *see also Buck v. Davis*, 137 S. Ct. 759, 775 (2017) (reaffirming that "[i]t is only when the lawyer's errors were 'so serious that counsel was not functioning as the "counsel" guaranteed ... by the Sixth Amendment' that *Strickland*'s first prong is satisfied" (citation omitted)). "And to establish prejudice, a defendant must show 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Andrus v. Texas*, 140 S. Ct. 1875, 1881 (2020) (per curiam) (quoting *Strickland*, 466 U.S. at 694).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003); *see also Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) ("[B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" (quoting *Strickland*, 466 U.S. at 689)).

And, "[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities."

*Richter*, 562 U.S. at 110. "The Supreme Court has admonished courts reviewing a state court's denial of habeas relief under AEDPA that they are required not simply to give [the] attorney's the benefit of the doubt, ... but to affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." *Clark v. Thaler*, 673 F.3d 410, 421 (5th Cir. 2012) (internal quotation marks omitted).

Therefore, on habeas review under AEDPA, "if there is any 'reasonable argument that counsel satisfied *Strickland*'s deferential standard,' the state court's denial must be upheld." *Rhoades v. Davis*, 852 F.3d 422, 432 (5th Cir. 2017) (quoting *Richter*, 562 U.S. at 105); *see also Sanchez*, 936 F.3d at 305 ("As the State rightly puts it, we defer 'both to trial counsel's reasoned performance and then again to the state habeas court's assessment of that performance.'" (quoting *Rhoades*, 852 F.3d at 434)).

To demonstrate prejudice, a habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Richter*, 562 U.S. at 111. "Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different," which "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-

probable-than-not standard is slight and matters 'only in the rarest case." *Id.* at 111-12 (quoting *Strickland*, 466 U.S. at 693, 696, 697). "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

IAC claims are considered mixed questions of law and fact and are therefore analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010); *Adekeye*, 938 F.3d at 682.

Where the state court adjudicated claims of ineffective assistance on the merits, this Court must review a habeas petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *Cullen v. Pinholster*, 563 U.S. 170, 190, 202 (2011); *compare Rhoades*, 852 F.3d at 434 ("Our federal habeas review of a state court's denial of an ineffective-assistance-of-counsel claim is 'doubly deferential' because we take a highly deferential look at counsel's performance through the deferential lens of § 2254(d)." (citation omitted)), *with Johnson v. Sec'y, DOC*, 643 F.3d 907, 910-11 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.").

In such cases, the "pivotal question" for this Court is not "whether defense counsel's performance fell below *Strickland*'s standard"; it is "whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101; *see also id.* at 105 ("Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by

*Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." (internal quotation marks and citations omitted)). In other words, AEDPA does not permit a *de novo* review of state counsel's conduct in these claims under *Strickland*. *See id.* at 101-02. Instead, on federal habeas review of a *Strickland* claim fully adjudicated in state court, the state court's determination is granted "a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* at 101.[3]

The state court obtained an affidavit from Skief's trial counsel, Roger Haynes, *see* Dkt. No. 12-37 at 176-79, found that he "is a trustworthy individual and that the statements made by him are worthy of belief," *id.* at 162, and summarized counsel's testimony in its detailed findings of fact and conclusions of law:

---

[3] *See also Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (per curiam) (explaining that federal habeas review of ineffective-assistance-of-counsel claims is "doubly deferential" "because counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment'"; therefore, "federal courts are to afford 'both the state court and the defense attorney the benefit of the doubt'" (quoting *Burt*, 571 U.S. at 22, 15)); *Adekeye*, 938 F.3d at 683-84 ("The Supreme Court standard on prejudice is sharply defined: 'It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.' [A petitioner] must show it was 'reasonably likely' the jury would have reached a different result, not merely that it could have reached a different result. The Court reaffirmed this point in *Richter*: 'The likelihood of a different result must be substantial, not just conceivable.' Now layer on top of that the habeas lens of reasonableness. [Where] the state court has already adjudicated [a petitioner's] ineffective-assistance claim on the merits, he must show that the court's no-prejudice decision is 'not only incorrect but "objectively unreasonable."' Put differently, [he] must show that every reasonable jurist would conclude that it is reasonable likely that [a petitioner] would have fared better at trial had his counsel conducted [himself differently]. 'It bears repeating,' the Supreme Court emphasized in *Richter*, 'that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.'" (footnotes omitted)).

(A) There were no text message records to be subpoenaed because his investigation revealed that Metro PCS does not retain the content of text messages that are sent between phones using their service.

(B) It was trial strategy to question the State's detective regarding his failure to obtain text messages. He wanted to raise doubt with the jury as to the possible existence of text messages that had gone uninvestigated in order to support a self-defense claim.

(C) There was no conclusive way to prove that the text messages existed. He introduced evidence of the text messages through the testimony of defense witnesses who testified that they saw the messages.

(D) He objected to the State's alleged improper argument and the ruling of the court instructed the jury that the evidence from the witness stand in the case was what the jury was to rely on. He objected so that he could point out to the jury that the argument by the State was not evidence and her argument was not supported by the evidence. He wanted to attack the prosecutor's integrity not preserve error. The objection was a strategy to discredit the prosecutor. He did not want to push the issue and draw attention to an objection that could have been overruled as a reasonable deduction from the evidence and ruined the effect the objection had on the jury.

(E) Applicant has a tattoo that says "Hitman." Witnesses testified that Applicant was known by the street name Hitman. During cross-examination, the prosecutor asked Applicant if she could call him Hitman and Applicant responded in the affirmative. He objected to the use of the nickname and the court overruled the objection.

(F) He reached an agreement with the State for the court to make an inquiry into the conversation that two members of the jury had with a trial observer who apparently knew Applicant. He accurately stated a lawful remedy with the court but the court incorrectly repeated it back.

(G) He fulfilled his duties as trial counsel and does not believe that he was ineffective.

*Id.* at 163-64.

The trial court, relying on counsel's testimony, first found that counsel's "pretrial investigation regarding the text message records was reasonable under the circumstances." *Id.* at 165. Considering the habeas standards applicable to an investigation by counsel – that "'[c]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary' [and that 'a] particular decision not to investigate must be directly

assessed for reasonableness in all the circumstances,' but [that federal courts] still 'apply a heavy measure of deference,'" *Howard*, 959 F.3d at 171 (quoting *Strickland*, 466 U.S. at 691; original brackets omitted) – Skief has not shown that the CCA's denial of this IAC claim was unreasonable, *see Adekeye*, 938 F.3d at 680 ("Adekeye fails to allege what a sufficient investigation would have uncovered or how it would have changed his trial outcome. As Adekeye cannot show prejudice, he cannot show that the state habeas court unreasonably applied *Strickland v. Washington* or other clearly established federal law." (footnote omitted)).

As to Skief's objections concerning references to his street name, the state court specifically found that counsel did his part to advocate against the use of Hitman:

> The Court notes that during cross-examination the prosecutor asked Applicant if she could call him Hit Man because everyone calls him Hit Man and Applicant responded in the affirmative.
> The Court notes that trial counsel objected to the use of the name Hit Man and the Court overruled his objection. After the ruling, trial counsel continued to argue his objection to the use of the name Hit Man. The Court notes that the Court called the State and trial counsel to the bench to continue the argument. After a discussion at the bench, trial counsel announced that he would like to continue the objection. The Court overruled the objection and instructed the State to proceed.

Dkt. No. 12-37 at 169.

And the state court concluded "that even if the reference to Applicant as Hit Man by the State had not been permitted, the evidence was sufficient to support the jury's guilty verdict and the result of the trial would not have been different but for Counsel's failure to secure a running objection to the State's use of the Applicant's street name." *Id.* at 170 (further finding "that there was ample evidence to support a reasonable jury's finding of guilt and that the Applicant has failed to prove that there

was a reasonable probability that the outcome would have been different if Counsel had objected to all of the State's references to him as Hit Man. It is unlikely, in the face of all the evidence with which the jury was presented, that the jury would have reached a different conclusion in the absence of the use of the street name.").

Applying the deferential *Strickland* standards through the deferential lens of AEPDA to these findings, made after obtaining uncontroverted sworn testimony, which the state court found to be credible, Skief has not shown that the CCA's denial of this IAC claim amounts to either "an unreasonable application of *Strickland* or an unreasonable determination of the evidence." *Garza v. Stephens*, 738 F.3d 669, 680 (5th Cir. 2013) (citing 28 U.S.C. § 2254(d)(1)-(2)); *see also, e.g.*, *Rhodes*, 852 F.3d at 432, 434; *Sanchez*, 936 F.3d at 305.

Finally, as to the alleged jury contamination, the state court made the following findings:

> The Court notes that trial counsel advised the Court that right after the lunch break that an acquaintance of Applicant who was sitting in the courtroom to observe the trial alerted his investigator that two jurors approached her to ask why she was there. Trial counsel further explained to the court that the acquaintance explained that she could not speak with them. The acquaintance did not speak with the jurors about the case or tell them why she was present.
> The Court notes that trial counsel proposed that in lieu of making a big in court discussion regarding the issue that he and the State agreed that the Court escorted by bailiffs could meet with the jury to re-urge the court's admonitions and inquire as to whether the encounter would influence the two jurors or affect them as jurors on the case.
> The Court notes that the Court stated that it would meet with the jury and stress the importance of restricting their deliberations to the facts and not take into consideration their previous contact with members in the gallery.
> The Court notes that under Texas Code of Criminal Procedure Article 36.22 no person shall be permitted to converse with a juror about

the case on trial except in the presence and by the permission of the court. A violation of Article 36.22, once proven by the defendant, triggers a rebuttable presumption of injury to the accused, and a mistrial may be warranted. *Hughes v. State*, 24 S.W.3d 833, 842 (Tex. Crim. App. 2000).

    The Court notes that a presumption may be rebutted by a showing that the case was not discussed or that nothing prejudicial about the Applicant was said. *Bokemeyer v. State*, 355 S.W.3d 199, 203 (Tex. App. – Houston [1st Dist] 2000, pet ref'd).

    The Court finds that the acquaintance did not discuss the case with the two jurors or even explain her presence at the trial.

*Id.* at 171-72.

Again, applying the *Strickland* standards through the lens of AEPDA to these findings, Skief has not shown that the CCA's denial of this IAC claim amounts to either "an unreasonable application of *Strickland* or an unreasonable determination of the evidence." *Garza*, 738 F.3d at 680.

The Court should therefore deny all IAC claims made in the federal habeas application.

## Recommendation

The Court should deny the application for a writ of habeas corpus.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by

reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: October 14, 2020

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE